The next matter, number 241176, United States v. Armani-Minier-Tejada. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning, Your Honors, and may it please the Court, Eamon Hart on behalf of Appellant Reserve, two minutes for rebuttal? You may. Thank you, Your Honors. I'm going to jump straight to the sufficiency issue on the machine gun enhancement. Here, the evidence, even viewed in the light most favorable to the government, is insufficient to link the possession of a machine gun by this particular defendant, Mr. Tejada, to any furtherance of the underlying substantive drug trafficking offense. And as a result, the elements of the statute on that enhancement are not satisfied, and that enhancement has to be vacated, along with it, the 30-year mandatory minimum that that came with. The government in this case is essentially relying on two categories of evidence in support of that enhancement. There's some video evidence and some testimonial evidence. Those two buckets, whether individually or as a whole, simply aren't sufficient to link the possession of the furtherance. And I'll start with the video evidence. The government relied principally on a single video at trial. It's Trial Exhibit 154.1. It's a three-second video. It depicts an individual wearing an Amiri brand sweatshirt. There's a caption. This was a Snapchat. It says, Amiri drip. And for approximately one second in that video, you can see this individual is holding a handgun. There was some subsequent testimony that the handgun was modified with a selector switch. Now, on both sort of substance and factual background, this video doesn't get the government there. And the reason is, first on substance, I mean, the government's theory seems to be this was a video designed to intimidate rivals. The context of the video makes clear that that is simply not a reasonable inference. This is a video. It's sent to a single user, Queen Jams. The government never identified through subpoena to Snapchat or any other testimony who this individual was. And it's part of a series of videos that were sent contemporaneously, all of which are depicting the defendant, for lack of a better word, trying to look cool. He's shirtless. He's stroking his braids. There's fun captions and some light and things surrounding his head. Yet, there's one section of that where he's wearing the sweater. He's emphasizing the sweater. He happens to be holding a gun. But the idea that that is furthering a substantive drug trafficking conspiracy, I don't think that's a remotely reasonable inference. And the government simply didn't put on evidence that would get it there. Now, moving on to the second category of evidence, which is testimonial evidence. The government's essentially relying on one, maybe two pages of testimony from a cooperating witness, Dyer Coleman. And what Coleman has asked, he's asked if the defendant had a machine gun. He says yes. Then he's asked who else had a machine gun. I thought the question was did the drug conspiracy have a machine gun? Yes, you're right. That was the question. That's a pretty different question. It is a different question. I think importantly so. That does a lot of work for the government on count two. It doesn't do any work for the government on count three. Does the drug conspiracy have them? Yes. Who has them? Tahada has one. So now he's possessing it for the drug conspiracy. I actually don't think it follows from that. Why? Because the conspiracy in the context of the first question is identifying the category of people and then asking who within that possesses one. Well, he's identifying the specific person. But I think it would be slightly different if the question was I name three people and I say do any of these three people have a gun? And yes, who among them has it? Tahada has it. That's different than does the drug conspiracy have guns? That suggests that the guns are being held for the conspiracy. Who has it? Tahada among those in the conspiracy has it. And then it goes on to say do you ever use them? Yes, we shoot rivals with them. So I want to parse this very carefully because I don't think that's quite how it reads if you look at the whole page. So did your drug conspiracy have a machine gun? Yes. Now, again, in that context, I mean, an entity can only possess through its members, right? That's true in the civil or criminal context. Then you move on. Yes, who had them? Me and Tahada. Anybody else? Just on that point, doesn't the very point you just made that an entity can't hold them suggest that in context the answer yes and then who, Tahada, suggests that the person who's holding it is holding it for the entity? I actually don't think it does. I think because the statute contemplates that you can possess without furthering or you can use or carry without it being done in relation to, it contemplates that you have to actually identify the specific purpose. But here the purpose is for the conspiracy. That's why he's holding it. Why wouldn't that be the reasonable inference to draw from that questioning? Well, I don't think it is. Particularly when it goes on to then talk about the context in which it was actually used. And it said we use it to shoot rivals. Well, and in that context, I think it's really important to parse this out. If I can go through the rest of that page, me and Tahada, anybody else, members of our gang, that's a broader group. And then he says, how did you use them? We, and it doesn't specify who. It's also important to note the context here. But that suggests that the gun, even if it's not used by Tahada, is the gun that was for the drug conspiracy. And that was then used for the conspiracy to shoot rivals. But by whom is the question? Again, that's great evidence for the government. Why wouldn't, why wouldn't the possession for the purpose of facilitating the actions of the drug conspiracy be enough to satisfy the statute? It would if the evidence were that Tahada himself did. But why wouldn't his possession of it so that others could use it be enough? I don't think the evidence shows that here. I don't think the testimony gets there. If the government had asked a single follow-up question, what did you see Mr. Tahada do during the time he was in the conspiracy with the machine gun? If the answer is favorable to the government, I don't think... Well, so what do you imagine that answer, a favorable answer could be beyond just shooting with it? Do you think it would be enough if he said, yeah, I held it so people could use it when they needed it? Would that be enough? In that context, it would depend on the context, but maybe, maybe not. Suppose that's what he, the question was, well, what did he do with it? Well, he held it for the conspiracy so that when we needed it, we could get it from him. Would that be enough? Probably in that context. I don't think that's what this testimony is. Okay, but then the question is really just, could you infer that that's what that testimony is? I don't think you can, and here's why. The other evidence that comes in along with this, first of all, when it talks about the actual use, right, that's the shooting, it's not specified who. Second, when the government actually did inquire about Mr. Tejada's use of weapons specifically, they asked Coleman with regard to one of the shootings, what weapon were you carrying? What weapon was Mr. Tejada carrying? Coleman was explicit. He says, I had the selector switch machine gun. Coleman had a regular, I'm sorry, not Coleman, Tejada had a regular nine millimeter. So that rebuts any inference that, you know, whenever Tejada is out doing something for the conspiracy, he's carrying a selector switch weapon. And in fact, we know there were only two or maybe three, the evidence was unclear about how many weapons there were. That's a much smaller subset of the weapons the conspiracy had access to. So I take your hypothetical, but that's not the evidence that came in here. And I think this is a case where Pothier, the Tejada's opinion of Pothier, talks about if the government doesn't introduce readily accessible evidence to get, to link up the consequence of an offense, that's too bad for the government. Here, this isn't something like, you know, state of mind, something that's metaphysically unknowable. The government had multiple cooperating witnesses who testified about specific instances of shooting and were even willing to testify about what weapons were used. They never asked, did you see Mr. Tejada use a machine gun at a shooting? They never even asked a broader question, right? For what purposes did you see Mr. Tejada carrying a gun? And maybe the answer is what the government would have liked. Maybe it's he brought it to deals. Maybe it's he shot with it. But maybe it's not. And the important thing is that evidence just isn't in the record. I think, again, going back to Pothier, there's a line in that opinion that I think is exactly on point here. Judge Tejada writes, this evidence, if I may complete, this evidence might generate a hunch, but you need something that pulls that hunch to beyond a reasonable doubt. And here you don't have that because the government chose not to ask the questions that would have led there. Does the Snapchat photo or video push it over at all? Absolutely not. I know my time's up. Absolutely not. Two reasons. One is, as I said earlier, the substance and the context just don't get you there. I mean, this is plainly not an intimidation video. The second thing is, the evidence that actually came in is this was sent to a single individual, Queen Jams, that individual was never identified. On appeal, the government is now advancing this theory that in addition to that, it was more broadly shared. There's no evidence of that. The government got records from Snapchat. Presumably the government could have gotten a record from Snapchat that said this was sent as, you know, I don't know what they call it, a broader share to something. That's not what the record said. All they have is Coleman who says it was posted to Snapchat. He has no foundation for that statement. The government didn't establish that he was with Tejada when it was posted. They also don't establish that he's using that, you know, as anything beyond a colloquialism, you know, shared. If he's sitting there next to Tejada, who has his phone out, and he sees Tejada hit send, he doesn't know if that's going to a broader group. And we actually do know from the records that were produced that it didn't. It went to a single individual who was never identified. I see my time is well over. I'll save the rest for rebuttal. Thank you. Thank you, counsel. At this time, would counsel for the appellee please introduce herself on the record to begin. Good morning. May it please the Court. Alexia Devencentis on behalf of the United States. I'll pick up where Defense Counsel left off with this question of the Snapchat posting because I believe that there's a bit of a factual misunderstanding that was, that appears in the defendant's reply brief and has been repeated here today. And that is this idea that Exhibit 152 somehow proves that this particular video of Muneer Tejada with the machine gun was not publicly posted. However, if you look at Joint Appendix page 1660, ATF agent Matthew Kelsch specifically testifies that Snapchat is an application that only saves data for a certain period of time so that after a certain amount of days, depending on the user settings, data can be lost. That explains why when you look at Exhibit 152, what you will see are only chats with not a single public snap, despite the fact that we know from testimony from both Coleman and Ulysses backed up by videos and screenshots that Muneer Tejada was publicly posting these sorts of videos. Now... That last phrase seems kind of key. When you say these sorts of videos, so the idea is that you just infer that even though there's no direct evidence that this was posted publicly, that it was? Well, to be, to be clear, what I'm pointing out at this point is merely the fact that Exhibit 152 doesn't prove that it wasn't posted publicly and that meanwhile... What he's suggesting is that you need affirmative evidence that it was. And for that, I would point, Your Honor, to Coleman's testimony. And is that testimony being used just for the purpose of saying that because other ones was we can infer this one was? Well, if I could break down that testimony a bit for Your Honor, Coleman specifically testified that he was there when this video was filmed. He also explained in other parts of his testimony that the entire purpose of filming videos was like this was so that they could post them to, quote, tell our audience it's either you or me. Coleman then stated that this particular video was posted on Snapchat using the exact type of language that he used several times throughout his testimony when referring to his own public posts. So the idea is that from that testimony we can infer it was publicly posted? Yes, absolutely. Even though there's no direct evidence that it was? Correct. I think that's an entirely fair inference. Even though there's evidence of one person having received it, you're saying that person would just be a member of the public who saw it? Well, I don't want to stray too far from the record here. I think if one understands how Snapchat works, it's clear why we would see that only in the direct messages between Queen Jams and Meneer Tejada. But again, Matthew Kelsch's testimony explains that certain types of data is lost after a certain period of time. And again, Coleman was crystal clear in stating that this was publicly posted. And I do want to emphasize this. That this was publicly posted? Yes, this particular video. What's his crystal clear testimony that it was publicly posted? The government asked, do you recall what happened with this video? He said, it was posted on Snapchat. And to confirm that this wasn't some stray line of testimony? Why does that equate to a statement that it was made public to all people? I've cited in the brief at least five other instances throughout Coleman's testimony where he used the same sort of language to refer to posts that are publicly posted for girls or enemies or anybody to see. And if there's any doubt about the fact that that's just how people talk about public snaps posted to, take a look at the defendant's reply brief at page eight, where he himself, in distinguishing between public posts and direct messages, uses those types, those sorts of things. So the key word is posted. Posted on Snapchat, exactly. And again, to emphasize, this wasn't some stray line of testimony from Coleman. After he stated this was posted on Snapchat, the government asked, do you recall that? And he confirmed that, yes, he did. I do want to be clear, though, that although the court can certainly get to sufficiency by reliance on 154.1 and the fact that we believe the jury could readily infer that it was publicly posted, you don't need that to affirm the machine gun finding in this case. The video, in our view, was just a visual manifestation of this defendant possessing the machine gun. And the public posting is just one of many ways one can use a machine gun in furtherance of the drug trafficking offense. And if the court will momentarily indulge me, I just want to emphasize the types of evidence that the jury heard here in relation to firearms generally. And then I'll turn back to the machine gun. Because the evidence that these defendants were using firearms in furtherance of the conspiracy was... Can I ask you about that? Absolutely. Because I think this case sort of really highlights this tension between inference and speculation. And it does seem like anyone reading the evidence here or sitting on the jury might think, well, probably this defendant possessed the machine gun in furtherance of a drug conspiracy. But do you agree that the evidence here needs to show that he possessed the machine gun in furtherance of a drug trafficking crime on a specific occasion? Well, to Judge Barron's point and some of the questions raised, poised to defense counsel, I do think it is enough that the drug conspiracy generally, that he as part of the drug conspiracy and for the purposes of the drug conspiracy sort of jointly possessed these machine guns along with his drug co-conspirators and that the machine gun was available to him to protect the vast quantities of drugs that he was dealing or the money that he was making by distributing them. And what's the best evidence in the record that reflects that? Well, again, I think there are sort of two key categories of evidence here. One is firearms generally. The second is machine guns specifically. On firearms generally, we know that the defendant and Coleman enlisted here to straw purchase at least a dozen firearms and they had a couple dozen other. The defendant gave Ulysses a gun when he joined the drug conspiracy. He scolded Coleman when Coleman once failed to bring a gun to a drug deal. He encouraged Clefman to, quote, keep that motherfucking blick by your side always, adding, that's how I am when I'm out there. And then the evidence backed that up, showing that there were firearms consistently at the Airbnbs in the cars when they're transporting drugs or cash. The evidence also showed the defendant and his co-conspirators engaged in firearms practice, which Coleman and Ulysses both explained was for the purpose of ensuring they were ready in case someone threatened their drugs or proceeds. And on multiple occasions, the defendant, in fact, used those firearms. So the bottom, if you take that evidence, the defendant doesn't contest that that evidence was sufficient for the jury to conclude that he possessed a number of firearms in furtherance, or at least one, in furtherance of the drug trafficking offense. But wants this court to believe that no rational jury could find that he possessed a machine gun for the exact same reason, that, in our view, is untenable, particularly when you take into account the fact that there's no lawful basis for possessing a machine gun. Coleman specifically testified that it was a group purchase amongst the drug co-conspirators. It was purchased. Well, he'd have a pretty big incentive not to use it for that purpose. I'm sorry? He would have a pretty big incentive not to use it for that purpose. I'm not entirely certain I understand what the incentive would be except for— I think it's the 30-year enhancement. Sure. But, nonetheless— So the whole thing turns on whether, notwithstanding that, he did it. And to say, well, why wouldn't he do it? The reason he wouldn't do it is because he doesn't want to get the 30-year enhancement, potentially. Respectfully, we think that a jury could rationally infer, given the overwhelming evidence of firearms generally and the overwhelming evidence that this was specifically— his possession of a machine gun beyond just the general inference that he used non-machine guns to facilitate the endeavors of the conspiracy, that he used the machine gun or possessed the machine gun for that purpose. Well, to be clear, the defendant doesn't dispute the fact that he personally possessed the machine gun, right? We have it in Exhibit 151. Correct. For the purpose of the conspiracy. Correct. I would point to the testimony that Coleman offered that Your Honor was discussing with What's your response to how your opponent responds to that testimony in explaining why? To him, that testimony doesn't tell you very much about how he possessed a machine gun for that purpose, given the way it's phrased. All it supports is the idea that he possessed a machine gun. The specific question about who possessed a machine gun, the response was, me and Tejada and members of our gang. Very clearly in that response, Coleman is indicating that me and Tejada at some points possessed this machine gun, a machine gun that was purchased as a joint purchase amongst his drug co-conspirators, right? Using drug proceeds. And moreover— He says that the gun was purchased using the gun proceeds? Absolutely, yes. Where does he testify to that? I do not have the particular record site at the moment, but he specifically testifies that Coleman, Menier, Tejada, Ulysses, and I believe it was Reckless, pulled money to buy these three— Pulled money from the drug proceeds of the gang? I believe that is correct, Your Honor, yes. So from the totality of this evidence, we believe whether or not Exhibit 154 was publicly posted, the jury could rationally find that the machine gun was possessed specifically in furtherance of the drug trafficking conspiracy. And unless there are any further questions, the government would rest on its brief. At this time, would counsel for the appellant please reintroduce himself on the record? He has a two-minute rebuttal. Eamon Hart, once again for Defendant Appellant Armani Menier Tejada. We just heard a lot about a lot of other guns that aren't machine guns. That might be great evidence on count two. It has nothing to do with the machine gun enhancement on count three. Count three is specific to Menier Tejada. The machine gun enhancement is specific to did he possess a machine gun in furtherance of the conspiracy? Was there testimony that he purchased the machine gun from the pooled drug assets of the group? I don't recall the specific testimony about that. I don't actually think there was testimony that he purchased it. I mean, Appellant Counsel just said the group. I actually don't think that's relevant because the purchase would be antecedent to the use, right? No, but it might add to the inference that it was then being used for the conspiracy. Well, the conspiracy... He wouldn't have bought it on his own, but if all the members of the conspiracy pooling the assets of the gang bought the gun, then he has it, it does add to the inference that it's supported. But I guess I'm just trying to figure out, is there evidence that he was actually purchasing it as a pooled endeavor from the assets of the gang? So I don't have a specific site in the record for that. So I don't want to represent either way. That said, again... I think it'd be helpful to the court if you could just provide us with a 28-J about that part of the record. Sir, let me... I just want to be very clear on what your question is and what you're looking for is, is there evidence... Well, the government's represented that there's testimony that the gun was purchased jointly with two others using the drug assets of the gang, and I want to know where in the record that is present, and then I guess you can respond to the 28-J after it comes in. So is the government going to do a 28-J and then we'll respond?  Just wanted to clarify that. Thank you. Again, though, I get back to, if the members of this conspiracy pooled assets and purchased a machine gun, great evidence about the members generally using it, maybe, sure. But specific to Dahada, and I want to go back to some of the case law here that talks about what you do in a situation where you have plausible inferences, some of which are consistent with guilt and some are consistent with innocence. If they pooled their money and bought a machine gun, if I may just finish briefly, is it plausible that Dahada could have used it in furtherance? Sure. It's also plausible that Coleman, that Ulysses, Charles, any number of the other people... What about the government's argument just possessing it for purpose of protecting the guns? I thought that's their... Protecting the drugs. You keep saying, like, if he used it, like it's some active use, but just possession for the purpose of protecting the endeavors of the conspiracy, I think, is the theory. If the government had evidence that Dahada himself possessed it for that purpose on a specific occasion, sure, but they haven't presented that evidence. I mean, when they ask about who is actually using them, when they ask Coleman that question, what he says is, members of our gang, we use them to shoot at rivals. He doesn't say, we use them to do X, Y, or Z, and by the way, Dahada was one of the people doing that. It would have been the simplest follow-up question in the world. Did you ever see Mr. Dahada use a machine gun to protect proceeds to fire at any of that? And if the answer is what they like, I'm not standing here. But they never ask the question. 30 mandatory years shouldn't ride on an unasked question that we're assuming the answer to. Thank you, your honors. Thank you. Yeah. Council, that concludes our... Dan, we're...